Nicole Lavallee (SBN 165755)
Daniel E. Barenbaum (SBN 209261)
Jeffrey V. Rocha (SBN 304852)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
        dbarenbaum@bermantabacco.com
        jrocha@bermantabacco.com

*Counsel for the Lead Plaintiff Alameda County Employees'*
*Retirement Association and Lead Counsel for the Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PAUL HAYDEN, et al.,<br><br>                          Plaintiffs,<br>v.<br><br>PORTOLA PHARMACEUTICALS INC., et al.,<br><br>                        Defendants. | No. 3:20-cv-00367-VC<br><br>**CLASS ACTION**<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR:<br>(I) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT,<br>(II) FINAL CERTIFICATION OF THE SETTLEMENT CLASS, AND<br>(III) FINAL APPROVAL OF PROPOSED PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  March 2, 2023<br>Time: 10:00 a.m.<br>Dept.: 4 – 17th Floor<br>Judge:  Hon. Vince Chhabria |

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ............................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

I.     INTRODUCTION ............................................................................... 1

II.    SUMMARY OF CLAIMS ................................................................ 3

III.   ARGUMENT ..................................................................................... 5

     A.    The Settlement is Fair, Reasonable, and Adequate and Warrants Final Approval ............................................................. 5

         1.    The Hanlon Factors Support Final Approval ............................................. 6

             a)    The Strength of Plaintiffs' Case Balanced Against the Substantial Risks of Continued Litigation ..................................... 7

             b)    The Expense, Complexity, and Likely Duration of Further Litigation .................................................................. 10

             c)    The Risk of Maintaining Class Action Status Throughout the Trial ......................................................................... 12

             d)    The Amount Offered in Settlement is Substantial ....................... 13

             e)    The Extent of Discovery Completed and the Stage of the Proceedings ................................................................ 14

             f)    The Experience and Views of Counsel ......................................... 15

             g)    Presence of a Government Participant ......................................... 15

             h)    The Reaction of the Settlement Class in the Proposed Settlement ................................................................... 16

         2.    Application of the Factors Identified in the Amendments to Rule 23(e)(2) Supports Approval of the Settlement as Fair, Reasonable, and Adequate ........................................................ 17

             a)    Class Representatives and Lead Counsel Have Adequately Represented the Settlement Class .................................................. 17

             b)    The Settlement Agreement Resulted From Arm's-Length Negotiations Between Experienced Counsel ............................... 18

             c)    The Relief Provided Is Adequate, Taking into Account the Costs, Risks, and Delay of Trial and Appeal, as Well as Other Factors ....................................................... 19

          d)      The Settlement Treats Settlement Class Members Equitably Relative to Each Other .................................................................. 20

B.      The Plan of Allocation Should be Finally Approved............................................. 21

C.      The Court-Approved Notice Satisfies the Requirements of Rule 23, the PSLRA, and Due Process ....................................................................................... 23

D.      Class Certification Of The Settlement Class Under Rule 23 Remains Appropriate .............................................................................................................. 25

IV.    CONCLUSION....................................................................................................................... 25

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

Allen v. Bedolla,
  787 F.3d 1218 (9th Cir. 2015) ................................................... 5

Azar v. Blount Int'l, Inc.,
  No. 3:16-cv-0483, 2019 WL 7372658 (D. Or. Dec. 31, 2019).................................. 14

Bellinghausen v. Tractor Supply Co.,
  306 F.R.D. 245 (N.D. Cal. 2015)................................................. 16

Campbell v. Facebook, Inc.,
  951 F.3d 1106 (9th Cir. 2020) .................................................. 6

Churchill Vill., L.L.C. v. Gen. Elec.,
  361 F.3d 566 (9th Cir. 2004) ................................................ 6, 7

Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC,
  533 F. Supp. 3d 881 (N.D. Cal. 2020) .......................................... 18

Cotter v. Lyft, Inc.,
  193 F. Supp. 3d 1030 (N.D. Cal. 2016) ...................................... 5, 6

Dyer v. Wells Fargo Bank, N.A.,
  303 F.R.D. 326 (N.D. Cal. 2014)................................................. 7

Eisen v. Carlisle & Jacquelin,
  417 U.S. 156 (1974).......................................................... 23

Foster v. Adams & Assocs., Inc.,
  No. 18-CV-02723-JSC, 2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ..................... 14

Fraley v. Facebook, Inc.,
  966 F. Supp. 2d 939 (N.D. Cal. 2013), aff'd sub nom.
  Fraley v. Batman, 638 F. App'x 594 (9th Cir. 2016) ............................... 5

Fulcher v. Olan Mills, Inc.,
  No. 3:11-CV-01821-EDL, 2011 WL 13243724 (N.D. Cal. Dec. 28, 2011) ............ 16

Gaudin v. Saxon Mortg. Servs., Inc.,
  No. 11-CV-01663-JST, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015).................. 21

Hanlon v. Chrysler Corp.,
  150 F.3d 1011 (9th Cir. 1998), overruled on other grounds by
  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011)..................................... passim

Hefler v. Wells Fargo & Co.,
   No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
   aff'd sub nom. Hefler v. Pekoc, 802 F. App'x 285 (9th Cir. 2020)............................................. 8

Hefler v. Wells Fargo & Co.,
   No. 3:16-cv-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ................................... 20

In re Bluetooth Headset Prod. Liab. Litig.,
   654 F.3d 935 (9th Cir. 2011) ................................................................................................... 19

In re Celera Corp. Sec. Litig.,
   No. 5:10-CV-02604-EJD, 2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ............................... 15

In re ECOtality, Inc. Sec. Litig.,
   No. 13-CV-03791-SC, 2015 WL 5117618 (N.D. Cal. Aug. 28, 2015) ...................................... 5

In re Extreme Networks, Inc. Sec. Litig.,
   No. 15-cv-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019).......................... 8, 14, 22

In re Hyundai & Kia Fuel Econ. Litig.,
   926 F.3d 539 (9th Cir. 2019) ....................................................................................... 13, 17, 19

In re LinkedIn User Priv. Litig.,
   309 F.R.D. 573 (N.D. Cal. 2015).......................................................................................... 7, 11

In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.,
   768 F. App'x 651 (9th Cir. 2019) ........................................................................................... 20

In re Netflix Privacy Litig.,
   No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .............................. 18

In re Omnivision Techs., Inc.,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................................. 12

In re Portal Software, Inc. Sec. Litig.,
   No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ............................... 13, 20

In re Portal Software, Inc. Sec. Litig.,
   No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)..................................... 11

Kim v. Allison,
   8 F.4th 1170 (9th Cir. 2021) ..................................................................................................... 6

Knapp v Art.com, Inc.,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ...................................................................................... 7

Larsen v. Trader Joe's Co.,
   No. 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014)................................. 17

Lloyd v. CVB Fin. Corp.,
  811 F.3d 1200 (9th Cir. 2016) .................................................................................. 9

Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................ 15

Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.,
  688 F.2d 615 (9th Cir. 1982) ............................................................................... 5, 21

Omnicare v. Laborers Dist. Council Constr. Indus.,
  575 U.S. 175 (2015) ................................................................................................. 9

Rieckborn v. Velti PLC,
  No. 13-CV-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ................... 21

Rodriguez v. W. Publ'g Corp.,
  563 F.3d 948 (9th Cir. 2009) ............................................................................. 11, 12

Schuler v. Medicines Co.,
  No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016) ..................... 14

Sudunagunta v. NantKwest, Inc.,
  No. 2:16-cv-01947-MWF-JEM, 2019 WL 2183451 (C.D. Cal. May 13, 2019) ..... 18

Todd v. STAAR Surgical Co.,
  No. CV 14-5263 MMF (GJSx), 2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ............ 8, 15, 21

Torrisi v Tucson Elec. Power Co.,
  8 F.3d 1370 (9th Cir. 1993) ................................................................................... 11

Vataj v. Johnson,
  No. 19-CV-06996-HSG, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ............. 13, 20, 21

Walsh v. CorePower Yoga LLC,
  No. 16-cv-05610-MEJ, 2017 WL 4390168 (N.D. Cal. Oct. 3, 2017) ..................... 18

**Statutes**

15 U.S.C. § 77k ..................................................................................................... 4

15 U.S.C. § 77l(a)(2) .............................................................................................. 4

15 U.S.C. § 77o ..................................................................................................... 4

15 U.S.C. § 77z-1(a)(7) .......................................................................................... 23

15 U.S.C. § 78j(b) .................................................................................................. 4

15 U.S.C. § 78t(a) .................................................................................................. 4

15 U.S.C. § 78u-4(a)(4) ................................................................................... 21

15 U.S.C. § 78u-4(a)(7) ................................................................................ 1, 23

17 C.F.R § 240.10b-5 ...................................................................................... 4

**Rules**

Fed. R. Civ. P. 23 ............................................................................... 2, 6, 23, 25

Fed. R. Civ. P. 23(a) ............................................................................ 1, 12, 25

Fed. R. Civ. P. 23(b) ....................................................................................... 1

Fed. R. Civ. P. 23(b)(3) ............................................................................ 12, 25

Fed. R. Civ. P. 23(c) .................................................................................. 1, 25

Fed. R. Civ. P. 23(c)(1)(C) ............................................................................ 12

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................... 23, 24

Fed. R. Civ. P. 23(c)(3) ................................................................................. 24

Fed. R. Civ. P. 23(e) .............................................................................. 1, 5, 25

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................ 23

Fed. R. Civ. P. 23(e)(2) ..................................................................... 5, 6, 17, 21

Fed. R. Civ. P. 23(e)(2)(C)(ii) ....................................................................... 19

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...................................................................... 19

Fed. R. Civ. P. 23(e)(2)(C)(iv) ...................................................................... 20

Fed. R. Civ. P. 23(e)(3) ................................................................................. 20

Fed. R. Civ. P. 30(b)(6) ................................................................................. 14

**Docketed**

In re SanDisk LLC Sec. Litig.,
    No. 15-cv-01455-VC (N.D. Cal. Oct. 23, 2019) ....................................... 21

In re Vivendi Universal, S.A. Sec. Litig.,
    No. 1:02-cv-05571 (S.D.N.Y.) ................................................................. 11

Jaffe Pension Plan v. Household Int'l., Inc.,
    No. 1:02-cv-05893 (N.D. Ill.) .................................................................................................. 11

SEB Inv. Mgmt. AB v. Align Tech., Inc.,
    No. 3:18-cv-06720 (N.D. Cal. April 28, 2022) ......................................................................... 14

## KEY DEFINED TERMS

### PARTIES AND COUNSEL

| | |
|---|---|
| Lead Plaintiff or ACERA | Lead Plaintiff Alameda County Employees' Retirement Association |
| OFPRS | Additional Named Plaintiff Oklahoma Firefighters Pension and Retirement System |
| Plaintiffs | Collectively, Lead Plaintiff and OFPRS |
| Lead Counsel | Berman Tabacco |
| OFPRS' Counsel | Saxena White P.A. |
| Plaintiffs' Counsel | Collectively, Lead Counsel and OFPRS' Counsel |
| Portola | Portola Pharmaceuticals, Inc. |
| Officer Defendants | Defendants Scott Garland, Mardi Dier, and Sheldon Koenig |
| Director Defendants | Defendants Hollings C. Renton, Jeffrey W. Bird, Laura Brege, Dennis Fenton, John H. Johnson, David C. Stump, and H. Ward Wolff |
| Portola Defendants | Collectively, Portola, Officer Defendants, and Director Defendants |
| Underwriter Defendants | Defendants Goldman Sachs & Co. LLC; Citigroup Global Markets Inc.; Cowen and Company, LLC; William Blair & Company, L.L.C.; and Oppenheimer & Co. Inc. |
| Defendants | Collectively, Portola Defendants and Underwriter Defendants |
| Defendants' Counsel | Paul, Weiss, Rifkind, Wharton & Garrison LLP for Portola Defendants; Morrison & Foerster LLP for Underwriter Defendants |

### OTHER TERMS

| | |
|---|---|
| ASC 606 | Accounting Standards Codification, Topic 606, Revenue from Contracts with Customer |
| Claims Administrator or Epiq | Court-appointed Claims Administrator, Epiq Class Action and Claims Solutions, Inc. |
| Exchange Act | Securities Exchange Act of 1934, 15 U.S.C. § 78a, et seq. |
| GAAP | Generally Accepted Accounting Principles |
| N.D. Cal. Guidance | Northern District's Procedural Guidance for Class Action Settlements (last modified Aug. 4, 2022), https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/. |

| | |
|---|---|
| PSLRA | Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 and 15 U.S.C. § 77z-1 |
| Rule | Federal Rules of Civil Procedure |
| Secondary Public Offering | Portola's Secondary Public Offering on or about August 14, 2019 |
| Securities Act | Securities Act of 1933, 15 U.S.C. § 77a, et seq. |
| Settlement Class Period or Class Period | January 8, 2019 through February 28, 2020, inclusive. |

## KEY DOCUMENTS IN CHRONOLOGICAL ORDER

| | |
|---|---|
| LP/LC Order | Order Granting Motion to Appoint Lead Plaintiff and Lead Counsel, Vacating Hearing, and Setting Briefing Schedule for Amended Pleadings, entered **April 22, 2020 (ECF No. 49)**[1] |
| Consolidated Complaint or CC | Consolidated Complaint for Violations of the Securities Laws, filed **May 20, 2020 (ECF No. 51)** |
| MTD CC Tr. | Transcript of Zoom Webinar Proceedings of the Official Electronic Sound Recording 11:19 – 12:30 p.m. for the Hearing on Defendants' Motion to Dismiss the Consolidated Complaint held on **September 24, 2020 (ECF No. 83)** |
| FAC | First Amended Complaint for Violations of the Securities Laws, filed **November 5, 2020 (ECF No. 87)** |
| SAC | Second Amended Complaint for Violations of the Securities Laws, filed **March 31, 2021 (ECF No. 113)** |
| MTD SAC or Motion to Dismiss the SAC | Notice of Motion and Motion to Dismiss the Second Amended Consolidated Class Action Complaint: Memorandum of Points and Authorities in Support Thereof, filed **May 5, 2021 (ECF No. 119)** |
| MTD SAC Opp. | Lead Plaintiff's Opposition to Defendants' Motion to Dismiss The Second Amended Consolidated Class Action Complaint, filed **June 9, 2021 (ECF No. 121)** |
| MTD SAC Order | Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Second Amended Consolidated Class Action Complaint, filed **August 10, 2021 (ECF No. 143)** |
| Joint CMC Statement | Joint Case Management Statement and [Proposed] Order, filed **August 25, 2021 (ECF No. 146)** |
| TAC | Third Amended Complaint for Violations of the Securities Laws, filed **August 31, 2021 (ECF No. 149)** |

---

[1] References throughout to "ECF No. __" are to the above-captioned case docket, unless otherwise specified.

| | |
|---|---|
| MTD TAC or Motion to Dismiss the TAC | Notice of Motion and Motion to Dismiss the Third Amended Consolidated Class Action Complaint; Memorandum of Points and Authorities in Support Thereof, filed **September 21, 2021 (ECF No. 163)** |
| MTD TAC Opp. | Lead Plaintiff's Opposition to Defendants' Motion to Dismiss the Third Amended Consolidated Class Action Complaint, filed **October 12, 2021 (ECF No. 165)** |
| MTD TAC Reply | Reply Memorandum of Points and Authorities in Further Support of Motion to Dismiss the Third Amended Consolidated Class Action Complaint, filed **October 26, 2021 (ECF No. 169)** |
| MTD TAC Tr. | Transcript of Zoom Webinar Proceedings of the Official Electronic Sound Recording 10:23 – 10:51 a.m. for the Hearing on Defendants' Motion to Dismiss the Third Amended Consolidated held on **January 20, 2022 (ECF No. 185)** |
| Motion for Class Cert. or Certification | Lead Plaintiff's Notice of Motion and Motion for Class Certification; Memorandum of Points and Authorities in Support Thereof, filed **February 17, 2022 (ECF No. 190)** |
| Class Cert. Opp. | Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, filed **April 25, 2022 (ECF No. 202)** |
| Class Cert. Reply | Lead Plaintiff's Reply in Support of Motion for Class Certification, filed **June 2, 2022 (ECF No. 217)** |
| Preliminary Approval Motion | Lead Plaintiff's Notice of Motion and Motion For Preliminary Approval of Proposed Class Action Settlement; Memorandum of Points And Authorities In Support Thereof, filed **September 19, 2022 (ECF No. 231)** |
| Preliminary Approval Order | Order Preliminarily Approving Settlement and Providing For Notice, entered **October 31, 2022 (ECF No. 242)** |
| Stipulation, Settlement, or Stipulation of Settlement | Stipulation and Agreement of Settlement, filed **September 19, 2022 (Exhibit A to the Preliminary Approval Order (ECF No. 231-2))** |
| Final Approval Motion or Mot. | Lead Plaintiff's Notice of Motion and Motion For: (I) Final Approval of Proposed Class Action Settlement, (II) Final Certification of The Settlement Class, and (III) Final Approval of Proposed Plan of Allocation; Memorandum of Points and Authorities In Support Thereof |
| Fee and Expense Motion or Mot. | Lead Counsel's Notice of Motion and Motion for: (I) Attorneys' Fees, (II) Reimbursement of Expenses, and (III) Award of Costs and Expenses to Plaintiffs; Memorandum of Points and Authorities in Support Thereof |
| Barenbaum Declaration or Barenbaum Decl. | Declaration of Daniel E. Barenbaum In Support Lead Plaintiff's Motion For Final Approval of Proposed Class Action Settlement and Lead Counsel's Motion For Attorneys' Fees, Reimbursement of Expenses, and Award of Costs and Expenses To Plaintiffs |

## EXHIBITS TO THE DECLARATION OF DANIEL E. BARENBAUM[2]

Exhibit 1 — Summary Table of the Hours and Lodestar of Berman Tabacco

Exhibit 2 — Summary Table of the Hours of Berman Tabacco by Category

Exhibit 3 — Summary Table of the Expenses of Berman Tabacco

Exhibit 4 — Berman Tabacco Firm Resume

Exhibit 5 — Declaration of Susan Weiss on Behalf of Lead Plaintiff Alameda County Employees' Retirement Association In Support of Lead Plaintiff's Notice of Motion And Motion For: (I) Final Approval of Proposed Class Action Settlement, (II) Final Certification of The Settlement Class, and (III) Final Approval of Proposed Plan of Allocation and Lead Counsel's Motion For Attorneys' Fees, Reimbursement of Expenses, and Award of Costs And Expenses To Plaintiffs (**"Weiss Declaration" or "Weiss Decl."**)

Exhibit 6 — Saxena White P.A. Firm Resume

Exhibit 7 — Declaration of David R. Kaplan on Behalf of Saxena White P.A. In Support of Lead Plaintiff's Notice of Motion And Motion For: (I) Final Approval of Proposed Class Action Settlement, (II) Final Certification of The Settlement Class, and (III) Final Approval of Proposed Plan of Allocation and Lead Counsel's Motion For Attorneys' Fees, Reimbursement of Expenses, and Award of Costs And Expenses To Plaintiffs (**"Kaplan Declaration" or "Kaplan Decl."**)

Exhibit 8 — Declaration of Chase Rankin on Behalf of Additional Named Plaintiff Oklahoma Firefighters Pension and Retirement System In Support of Lead Plaintiff's Notice of Motion and Motion For: (I) Final Approval of Proposed Class Action Settlement, (II) Final Certification of The Settlement Class, and (III) Final Approval of Proposed Plan of Allocation and Lead Counsel's Motion For (I) Attorneys' Fees, (II) Reimbursement of Expenses, and (III) Award of Costs and Expenses to Plaintiffs (**"Rankin Declaration" or "Rankin Decl."**)

Exhibit 9 — Declaration of Eric Blow Regarding Dissemination and Publication of Settlement Notice (**"Blow Notice Declaration" or "Blow Notice Decl."**)

Exhibit 10 — True and correct excerpted pages from Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, NERA Economic Consulting (Jan. 25, 2022)

---

[2] True and correct copies of all Exhibits are attached to the Barenbaum Declaration.  All references to **Exhibit** or **Ex.** refer to the exhibits attached to the Barenbaum Declaration.

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

1.      Whether the terms of the preliminarily approved Settlement[3] of this action appear fair, reasonable, and adequate under Rule 23(e) and should be granted final approval;

2.      Whether certification of the Settlement Class remains appropriate under Rules 23(a) and 23(b);

3.      Whether the Plan of Allocation for the distribution of the proceeds of the Settlement is fair, reasonable, and adequate, and should be finally approved by the Court; and

4.      Whether Notice was sufficient in accordance with Rules 23(c) and 23(e) and 15 U.S.C. § 78u-4(a)(7) and satisfies due process.

---

[3] All capitalized terms not otherwise defined herein have the same meaning as set forth in the September 19, 2022 Stipulation of Settlement.  Unless otherwise indicated, all emphasis is added and all alterations, internal quotation marks, and citations (with limited exceptions) are omitted.

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 2, 2023, at 10:00 a.m., via Zoom Webinar ID: 161 285 7657, Password: 547298, Lead Plaintiff ACERA will move this Court for an order: (1) granting final approval of the proposed Settlement of this action, on the grounds that it is fair, reasonable, and adequate and merits final approval under Rule 23(e); (2) finally certifying the Settlement Class preliminarily approved pursuant to Rules 23(a) and 23(b); (3) granting final approval of the proposed Plan of Allocation, on the grounds that it is fair, reasonable, and adequate; and (4) finding that the Settlement Notice provided to the Settlement Class was sufficient and in accordance with Rules 23(c) and 23(e) and 15 U.S.C. § 78u-4(a)(7) and satisfies due process.

This motion is based on the following memorandum of points and authorities; the accompanying Barenbaum Declaration and the exhibits attached thereto; the Blow Notice Declaration (**Ex. 9**); the Stipulation of Settlement; all pleadings and records filed herewith; and such oral and documentary evidence as may be presented at the hearing of this motion.

Defendants do not oppose this Motion.  Barenbaum Decl. ¶¶5.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiffs and Defendants have achieved a proposed Settlement of this action for $17.5 million in cash for the benefit of the Settlement Class in consideration for resolving all claims alleged.  If approved, the proposed Settlement will provide the Settlement Class with a substantial, immediate, concrete benefit and allow the parties to avoid those protracted risks and uncertainties present in this action and inherent in complex securities class action litigation generally—including the risk that the Settlement Class could recover nothing or substantially less than the Settlement Amount after additional years of exhaustive litigation and delay.  See Barenbaum Decl. ¶¶10, 54-67.  The Settlement is the result of extensive arm's-length negotiations between highly experienced counsel, which included a full-day mediation session before nationally recognized mediator Robert A. Meyer, Esq. of JAMS, followed by individual

follow-up sessions with counsel.  Barenbaum Decl. ¶¶11, 41-44.

As detailed in the accompanying Barenbaum Declaration, Plaintiffs secured the Settlement due to vigorous efforts over the course of over two years of hard-fought litigation and a thorough understanding of the strengths and weaknesses of the claims and defenses in the action.  These efforts included, inter alia: (i) interviews with former Portola employees and customers; (ii) extensive consultation with, and analysis by, forensic auditing and damages and class certification/market efficiency consultants; (iii) detailed reviews of Portola's public filings, annual reports, press releases, conference call transcripts, and other publicly available information; (iv) the review of analysts' reports and articles relating to Portola; (v) the drafting of a consolidated complaint and three amended complaints; (vi) research of the applicable law with respect to the claims asserted in the four complaints and the potential defenses thereto; (vii) extensive briefing regarding the asserted legal and factual claims, both in opposing Defendants' motions to dismiss each of the four complaints and in preparing a motion for and reply brief in support of class certification; (viii) the review of thousands of documents produced in discovery,[4] including third-party discovery of Plaintiffs' investment managers; and (ix) the taking or defending of seven depositions, including expert depositions, Plaintiffs' depositions, and depositions of Plaintiffs' external investment managers.  See, e.g., Barenbaum Decl. ¶9.

On October 31, 2022, this Court preliminary approved the Settlement, certified the Settlement Class, and approved the notice program to the Settlement Class.  See Preliminary Approval Order; Barenbaum Decl. ¶14.  Based upon their experience, evaluation of the facts and the applicable law, and recognition of the substantial amount provided under the Settlement as well as the risks and expenses of protracted litigation against Defendants, Lead Counsel and Lead Plaintiff submit that the proposed Settlement is fair, reasonable, and adequate under Rule 23—an excellent result and in the best interests of the Settlement Class.  Further

---

[4] Defendants produced to Lead Plaintiff of over 32,000 documents (including over 211,000 produced pages as well as voluminous spreadsheets).  Barenbaum Decl. 3 n.4, 37.

confirming this is the fact that, to date, no Settlement Class Member has filed any objection to the Settlement, nor has any Settlement Class Member requested exclusion.

Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and Plan of Allocation, finally certify the Settlement Class, and find that the Notice was sufficient and satisfied the requirements for due process.  Barenbaum Decl. ¶¶14, 77, 105, 115, 123.

## II.    SUMMARY OF CLAIMS

In this action, Plaintiffs allege the following, which Defendants vigorously deny.

Plaintiffs allege that during the Class Period (January 8, 2019 through February 28, 2020), Defendant Portola began bringing to market on a commercial scale its new and claimed-to-be novel drug, Andexxa (Portola's only viable product), which was designed to address bleeding emergencies resulting from the use of certain anti-coagulants.  TAC ¶¶59, 68.  During that commercialization phase, Portola continued to sell short-dated 6-12 month product despite being approved to sell a longer shelf-life 24-plus month Andexxa.  Id. ¶12.  Andexxa was extremely expensive and utilized only in emergencies; therefore, relatively few doses were stocked by customers, and it was unknown whether or when the drug would be used.  Id. ¶¶60, 126, 214.  "Presumably because of these challenges, Portola offered customers a very generous return policy for Andexxa…." (MTD SAC Order 3), where customers or distributors could return Andexxa from 3 months prior to expiration through 6 months after (id. at 3-4).  That meant that short-dated product sold in late 2018 or into 2019 could have been returned well into 2020.  Id. at 4.

Plaintiffs allege that in order to recognize revenue for Andexxa sales, ASC 606 required that the Company have a high-level certainty that significant revenue reversal would not occur in the future.  TAC ¶171.  Plaintiffs further allege that Portola improperly and materially recognized most Andexxa revenue immediately upon sale to its distributors in direct violation of GAAP rule ASC 606, as there were clear indicators that significant revenue reversal would occur—e.g., a generous return policy, likely impending returns from short-dated and soon-

expiring product, and a lack of appropriate bases to predict how much product might be returned.  Id. ¶¶152, 180- 203.  Indeed, Portola knew at year-end 2018 that its return reserve account had been depleted by 90%, with just $299,000 remaining—a stark metric on its own, and yet not publicly disclosed until the final alleged corrective disclosure made 14 months later in the 2019 Form 10-K, filed on February 28, 2020.  See MTD SAC Order 6-10.

Relatedly, Plaintiffs also allege that Portola regularly and repeatedly attempted to paint a picture of incredibly high and regular demand and utilization throughout the Class Period.  That was allegedly false and misleading for two reasons.  First, those statements were based on the improperly recognized revenue under ASC 606.  TAC ¶218(e).  Second, Portola knew internally that demand was anemic and usage of Andexxa was limited once sold.  Id. ¶¶209-21.

The alleged truth about the demand and utilization for Andexxa and revenues stemming from it emerged through disclosures on January 9, February 26, and February 28, 2020.  TAC ¶¶22, 134-36, 186(b), 252, 257.  Analysts and the market reacted.  TAC ¶¶260, 269-70.  As that truth was revealed to investors, Portola's stock price declined.  Id. ¶¶250-79.  As a result of Defendants' alleged wrongful acts and omissions and the decline in the market value of Portola's securities, Plaintiffs and Settlement Class Members suffered significant losses and damages.  Id.  Plaintiffs bring claims under (1) the Exchange Act, which encompass secondary market purchases and sales of Portola common stock and (2) the Securities Act (as well as the Exchange Act) for direct-sale purchases made pursuant to an August 2019 Secondary Public Offering.[5]  TAC ¶¶1-2, 294-310.

The Barenbaum Declaration, filed concurrently herewith, further details the factual and procedural background of this case and the events that led to the Settlement.  See Barenbaum

---

[5] Specifically, Plaintiffs assert claims under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R § 240.10b-5, as well as Sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2), and 77o. Barenbaum Decl. ¶22; TAC ¶1.

Decl. ¶¶17-48.[6]

## III.   <u>ARGUMENT</u>

### A.   **The Settlement is Fair, Reasonable, and Adequate and Warrants Final Approval**

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Ninth Circuit has "repeatedly noted that there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." <u>Allen v. Bedolla</u>, 787 F.3d 1218, 1223 (9th Cir. 2015); <u>see also</u> <u>In re ECOtality, Inc. Sec. Litig.</u>, No. 13-CV-03791-SC, 2015 WL 5117618, at *2 (N.D. Cal. Aug. 28, 2015) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits."). At final approval, "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." <u>Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.</u>, 688 F.2d 615, 625 (9th Cir. 1982); <u>Fraley v. Facebook, Inc.</u>, 966 F. Supp. 2d 939, 948 (N.D. Cal. 2013), <u>aff'd sub nom.</u> <u>Fraley v. Batman</u>, 638 F. App'x 594 (9th Cir. 2016).

Because the Court applied the same rigorous level of scrutiny at preliminary approval of the Settlement as it does now at final approval (<u>see</u> <u>Cotter v. Lyft, Inc.</u>, 193 F. Supp. 3d 1030, 1035-37 (N.D. Cal. 2016) (Chhabria, J.); <u>see also</u> Standing Order for Civil Cases Before Judge Vince Chhabria ("Standing Order") ¶57), the Court must again consider the largely overlapping factors set forth in <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir. 1998), <u>overruled on other grounds by</u> <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338 (2011), and Rule 23(e)(2).

To determine whether a proposed settlement is fair, reasonable, and adequate, the Ninth Circuit considers eight non-exhaustive "<u>Hanlon</u> factors:"

---

[6] The Barenbaum Declaration is an integral part of this submission and, for the sake of brevity herein, Lead Plaintiff respectfully refers the Court to it for a detailed description of the procedural history of this matter and Settlement negotiations (Barenbaum Decl. ¶¶17-48), as well as, <u>inter alia</u>: the claims asserted, the risks of continued litigation, compliance with the Court-approved notice plan and the reaction of the Settlement Class to date, and the Plan of Allocation. <u>See also</u> Preliminary Approval Motion 5-6 (containing a brief, but comprehensive, narrative of the procedural history).

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020).[7]  Rule 23, as amended in December 2018, provides additional guidance for whether approval of a class action settlement should be granted.  See Fed. R. Civ. P. 23(e)(2).  Those factors include whether: (1) "the class representatives and class counsel have adequately represented the class;" (2) "the [proposed settlement] was negotiated at arm's length;" (3) "the relief provided for the class is adequate…;" and (4) "the [proposed settlement] treats class members equitably relative to each other."  Id.

The Preliminary Approval Motion detailed why consideration of those factors merits a finding that the Settlement is fair, reasonable, and adequate.  Preliminary Approval Motion 8-27.  In granting preliminary approval, the Court adopted those conclusions, finding that "the Settlement appears to fall within the range of possible approval and is therefore sufficiently fair, reasonable, and adequate to warrant providing notice of the Settlement to the Settlement Class…."  Id. 2.  Those factors, summarized again in this final approval memorandum, continue to support approval of the Settlement.  And that conclusion is further bolstered by the discussion herein of the reaction of the Settlement Class—a factor that was not yet ripe for consideration at the time of preliminary approval.

Thus, for the reasons discussed herein, the proposed Settlement meets the criteria set forth by the Ninth Circuit and federal rules.

### 1.    The Hanlon Factors Support Final Approval

At final approval, courts assess the "settlement taken as a whole."  In re LinkedIn User

---

[7] See also Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 576 n.7 (9th Cir. 2004).  The Ninth Circuit refers to these factors as both "Hanlon factors" and "Churchill factors."  Compare Campbell, 951 F.3d at 1121 (citing "Hanlon" factors), with Kim v. Allison, 8 F.4th 1170, 1178 (9th Cir. 2021) (citing "Churchill factors").  This brief references the Hanlon factors consistent with this Court's opinion in Cotter, 193 F. Supp. 3d at 1035.

Priv. Litig., 309 F.R.D. 573, 583 (N.D. Cal. 2015) (quoting Hanlon, 150 F.3d at 1026).  Courts

"must balance the risks of continued litigation, including the strengths and weaknesses of

plaintiff's case, against the benefits afforded to class members, including the immediacy and

certainty of recovery."  Knapp v Art.com, Inc., 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

Lead Plaintiff's damages consultant has determined that the **maximum** amount of class-

wide damages for the Exchange Act claims are $301.1 million.  Barenbaum Decl. ¶52.  This

assumes that 100% of the stock drops were caused by the revelation of the alleged fraud (which

it likely is not) and that Plaintiffs prevail on all of their arguments, including those in support of

loss causation and damages.  The proposed Settlement recovery of $17.5 million here represents

approximately 5.8% of those estimated maximum alleged damages.  Id. ¶53.  That percentage is

in line with recent comparable securities class action settlements and is within the range of

recoveries found reasonable by courts in this Circuit and others.  Id.; see infra § III.A.1.d.

Further, if Defendants prevailed on some or many of their arguments, damages would be

drastically reduced—potentially to nothing.  Barenbaum Decl. ¶¶10, 62-67.  Moreover, even if

Plaintiffs were able to secure a judgment against Defendants despite their myriad of attacks, if it

is overturned on post-trial appeal, Plaintiffs and the Settlement Class might still ultimately

recover nothing.  See, e.g., Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 331 (N.D. Cal.

2014).

Each of the relevant Hanlon factors are set forth and discussed in detail below.[8]

### a)   The Strength of Plaintiffs' Case Balanced Against the Substantial Risks of Continued Litigation

As set forth in the Preliminary Approval Motion and detailed in the Barenbaum

Declaration, although Lead Plaintiff and Lead Counsel believe that the case they have developed

against Defendants is strong, that confidence is tempered by the considerable risk, particularly in

a complex case such as this, that continued litigation would lead to a smaller recovery, or worse,

no recovery at all.  Defendants have asserted and/or will assert a host of arguments and defenses,

---

[8] The Hanlon factors used to evaluate settlements are non-exclusive and need not all be shown. Churchill Village, 361 F.3d at 576 n.7.

the success of just one or several of which could have defeated Plaintiffs' case or catastrophically reduced damages.  The risk of litigation is particularly relevant in securities class actions, which "are often long, hard-fought, complicated, and extremely difficult to win."  In re Extreme Networks, Inc. Sec. Litig., No. 15-cv-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019).  Indeed, there are "inherent uncertainties of trying securities fraud cases…." Hefler v. Wells Fargo & Co., No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), aff'd sub nom. Hefler v. Pekoc, 802 F. App'x 285 (9th Cir. 2020).  These risks, on balance, clearly weigh in favor of settlement.

As explained at length in the Preliminary Approval Motion and Barenbaum Declaration, and as summarized herein, Defendants presented a multitude of arguments in their motions to dismiss and briefs in opposition to class certification, as well as throughout the discovery process, that vigorously disputed virtually all elements of Plaintiffs' claims, both legal and factual.  Plaintiffs, through Lead Counsel, have made a thorough investigation and analysis into the facts, legal issues, and circumstances relevant to the claims here.  See supra §§ I-II; Barenbaum Decl. ¶¶6-9, 24-40.  Lead Counsel has therefore had an opportunity to thoroughly examine the issues and consider the relative strengths and weaknesses of the claims and defenses.  Id. ¶¶6-8, 10, 54-67; see Todd v. STAAR Surgical Co., No. CV 14-5263 MMF (GJSx), 2017 WL 4877417, at *4 (C.D. Cal. Oct. 24, 2017) (approving settlement after, among other things, the parties "engaged in substantial discovery" and "had ample information with which to make informed settlement decisions").  These issues implicate, inter alia, each of the necessary elements of falsity, materiality, scienter, loss causation, and damages (as well as issues related to class certification (see infra, § III.A.1.c)).[9]  Barenbaum Decl. ¶56.

Defendants would contend that they made no actionable material misrepresentations or omissions by arguing, inter alia, that: (a) the scope of the case was confined to more modest 2018 sales and did not include 2019 sales, creating a  "narrow" and "discrete" issue focusing solely only on the failure to disclose the 90%-depleted $299,000 2018 year-end return reserve

---

[9] Lead Plaintiff discussed the strengths of the case balanced against the substantial risks of continued litigation at length in the Preliminary Approval Motion (at 9-15), which is incorporated herein by reference.  A summary of that discussion is presented here.

balance (Barenbaum Decl. ¶57); (b) the return reserve balance and issue of whether Portola complied with GAAP and ASC 606 in recognizing revenue were immaterial to Plaintiffs' investment managers' and Settlement Class Members' investment decisions (id.); (c) alternative immaterial factors caused the 2018 end-of-year return reserve balance to drop by 90% to $299,000, and thus there was no actionable omission in the 2018 Form 10-K (id.); (d) despite raising ASC 606 and revenue recognition as "Critical Audit Matters," Portola's auditor, Ernst & Young ("E&Y"), provided a clean audit opinion upon which Defendants relied and did not require a restatement, thus bolstering the validity of Defendants' reporting and statements (id.); and (e) Defendants' decisions and statements about both demand and returns and reserve provisioning were good-faith non-actionable opinions under Omnicare v. Laborers Dist. Council Constr. Indus., 575 U.S. 175 (2015) (id.).

Defendants would also contend that they did not act with the requisite scienter by arguing, inter alia, that (a) the evidence would not support a finding that defendants knew that their return reserves did not comply with GAAP, particularly given E&Y's audit opinion (Barenbaum Decl. ¶58); (b) alternative factors caused the 2018 end-of-year return reserve balance to drop by 90% to $299,000, and thus knowledge of that drop and the small year-end remainder in the 2018 reserve account does not support an inference of scienter (id.); and (c) there are no other common indicia of scienter, such as a restatement or U.S. Securities and Exchange Commission action or investigation (id.).  While certain of Plaintiffs' scienter allegations were sufficiently supported in the pleadings to survive Defendants' motions to dismiss, proving scienter at trial through admissible evidence was far from certain.

Plaintiffs also face several risks to establishing loss causation and damages.  "Loss causation is shorthand for the requirement that investors must demonstrate that the defendant's deceptive conduct caused their claimed economic loss."  Lloyd v. CVB Fin. Corp., 811 F.3d 1200, 1209 (9th Cir. 2016).  Defendants would challenge (and have challenged) loss causation and the scope of damages recoverable in this case by arguing, inter alia, that (a) the February 26, 2020 corrective disclosure was primarily about Bevyxxa and not Andexxa (Barenbaum Decl. ¶59); (b) the corrective disclosures that Plaintiffs point to and their resulting stock drops stem

from a change in circumstances for Portola's Andexxa sales in the fourth quarter of 2019, and not misstatements or omissions about GAAP / ASC 606, return reserves, or demand and utilization (id.); (c) Plaintiffs' damages expert must disaggregate the stock drops related to the GAAP / ASC 606 theory from the "demand and utilization" theory, which Defendants claim is untenable and at a minimum would significantly cut damages (id.); (d) since (Defendants assert) "demand and utilization" claims were dismissed, so too were the January 9 and February 26, 2020 corrective disclosures originally associated with those claims, leaving just the February 28, 2022 disclosure and the relatively minor stock-price drop associated with it (id.); (e) Plaintiffs and the Settlement Class were not damaged because (Defendants argue) there was no actionable misrepresentation or omission or scienter, as detailed supra at 8-10 (id.).

While Plaintiffs disagree with the positions asserted by Defendants and hoped to have prevailed on many of them, some present significant and potentially catastrophic challenges for Plaintiffs. For example, Defendants could convincingly argue that during the Class Period in 2019, Portola's auditor provided a clean audit opinion and did not require a restatement after it raised and considered ASC 606 and revenue recognition as a Critical Audit Matter. Barenbaum Decl. ¶¶57, 65. ASC 606 was a newly implemented rule with limited published guidance, which created significant uncertainty surrounding Plaintiffs' arguments. And under that shadow, E&Y would have essentially served as a "free testifying expert" supporting Defendants' position. Such testimony could have made a significant, if not insurmountable, impression on the Court and/or the jury, which would leave the value of Plaintiffs' claim at nothing.

Given the foregoing risks, Plaintiffs and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. Barenbaum Decl. ¶61; **Ex. 5** (Weiss Decl.) ¶¶5, 8 (ACERA); **Ex. 8** (Rankin Decl.) ¶¶9, 12 (OFPRS).

### b) The Expense, Complexity, and Likely Duration of Further Litigation

Given the complexity of securities class actions, settlement is often proper as "[a]ny further litigation would likely be complex, expensive and a favorable outcome improbable." In

re Portal Software, Inc. Sec. Litig., No. C-03-5138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007)"; see Torrisi v Tucson Elec. Power Co., 8 F.3d 1370, 1375-76 (9th Cir. 1993) (finding settlement fair due to "the cost, complexity and time of fully litigating the case"); LinkedIn User Privacy Litig., 309 F.R.D. at 587 ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

    If the Settlement Class were to survive class certification during litigation, the action would have proceeded to summary judgment.  Likewise, if the Settlement Class were to have survived summary judgment, the action would have then proceeded to trial, which would have been extremely complex, expensive, and risky.  And whether Plaintiffs would have prevailed or lost at any or all of these litigation phases, the ultimate result and recovery for the Settlement Class (or lack thereof) would only have been determined and paid after years of post-trial appeals.  See, e.g., Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009) (noting that "this factor, too, favors the settlement").[10]  Even if Plaintiffs were able to secure a judgment against Defendants at trial, is entirely possible that they might ultimately recover nothing after reversal on appeal, leaving the Settlement Class to receive no compensation from after years of litigation.  And even assuming a successful appeal, Settlement Class Members would have likely faced a complex, lengthy, and contested claims administration process to recover their individual awards.

    Without Settlement, resolution of this action would unquestionably entail considerable time, expense, and uncertainty, making the present value of a certain and substantial recovery far preferable to the mere chance of a greater recovery in the distant future (with the real possibility

---

[10] In other securities fraud class actions that have gone to trial, it has taken as long as seven years to proceed from verdict to final judgment, which would enormously magnify the Settlement Class's risk of recovery and expenses and delay its compensation.  See, e.g., Jaffe Pension Plan v. Household Int'l., Inc., No. 1:02-cv-05893 (N.D. Ill.) (verdict form entered on May 7, 2009 (ECF No. 1611) & Final Judgment entered on Nov. 10, 2016 (ECF No. 2267)), and In re Vivendi Universal, S.A. Sec. Litig., No. 1:02-cv-05571 (S.D.N.Y.) (verdict form entered on Feb. 10, 2010 (ECF No. 998) & Final Judgment entered on May 9, 2017 (ECF No. 1317)).

of a smaller one or none at all).  Barenbaum Decl. ¶¶10, 62-67.

> **c)   The Risk of Maintaining Class Action Status Throughout the Trial**

Class certification—which was fully briefed but not yet heard when the agreement to settle was reached—poses additional risks.  Barenbaum Decl. ¶¶60-61.

As discussed in Lead Plaintiff's Preliminary Approval Motion, Defendants vigorously contested certification of a litigation class.  First, they argue that individual issues predominate and defeat the class predominance requirement of Rule 23(b)(3), where they assert that: (1) Plaintiffs failed to offer a class-wide damages methodology, (2) there are price impact rebuttals for three of the four corrective disclosure dates alleged in the TAC, and (3) there are individualized issues that defeat OFPRS' standing to assert Securities Act claims for the August 2019 Secondary Public Offering.  Barenbaum Decl. ¶60.  Second, Defendants argue that there are problems with the adequacy and typicality requirements for class certification under Rule 23(a), where (they assert that): there are individualized rebuttals regarding to issues of reliance and OFPRS' Securities Act standing: (1) the fraud-on-the-market doctrine is inapplicable here because (Defendants suggest) Plaintiffs and their outside investment managers did not rely on the integrity of the market nor the public misstatements / omissions that Plaintiffs allege are at the heart of the GAAP / ASC 606 claims, and (2) OFPRS has not adequately demonstrated through tracing that it purchased shares from the Secondary Public Offering and therefore does not have standing to assert Securities Act claims on behalf of the proposed Settlement Class.  Id.

While Plaintiffs believe that they would prevail at class certification and rebut these arguments, losing on just one of them could defeat litigation class certification at the trial and appellate levels, bringing the value of Plaintiffs' case to at or near zero.  Beyond that, there is a further risk of decertification at a later time.  See Fed. R. Civ. P. 23(c)(1)(C); Rodriguez, 563 F.3d at 966 ("A district court may decertify a class at any time."); In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]here is no guarantee the certification would survive through trial….").

In light of the above, this factor weighs in favor of finally approving this Settlement.[11]

### d)    The Amount Offered in Settlement is Substantial

When evaluating the adequacy of a settlement, courts balance a plaintiff's expected recovery against the value of the offer.  In re Portal Software, Inc. Sec. Litig., No. C 03 5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007).  As explained in the Preliminary Approval Motion and Barenbaum Declaration, the proposed $17.5 million Settlement is well within the range of reasonableness in light of the risks of continued litigation and potential recovery at trial.

Based on consultation with Plaintiffs' damages consultant, aggregate maximum possible damages for the Exchange Act claims are $301.1 million (using the 80/20 Multi-Trader Model with market loss constraints).[12]  Barenbaum Decl. ¶52.  Therefore, the $17.5 million recovery under the proposed Settlement—none of which will revert to Defendants—constitutes approximately 5.8% of the maximum recoverable damages.  Barenbaum Decl. ¶53.  And 5.8% assumes that (1) all of the stock drops on the corrective days alleged are associated with correcting the fraud and falsity alleged, which is certainly not the case (see id. ¶52), and (2) Plaintiffs prevail against Defendants on all claims for all alleged damages (see id.)— something that is extraordinarily unlikely given the risks detailed above.  This recovery is in line with recent comparable securities class action settlements and is within the range of recoveries found reasonable by courts in this Circuit and others.  See, e.g., Vataj v. Johnson, No. 19-CV-06996-HSG, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (2% of estimated

---

[11] Most of Defendants' arguments do not pose a challenge to certifying a Settlement Class here. Rather, Defendants' arguments were premised on the purported risk that these unique defenses could in the future become a distraction at trial.  See Class Cert. Reply 4.  In any event, the arguments have no bearing on the adequacy of representation relevant to the certification of a class for settlement purposes.  See In re Hyundai & Kia Fuel Econ. Litig., 926 F.3d 539, 556 (9th Cir. 2019) ("criteria for class certification are applied differently in litigation classes and settlement classes").

[12] Damages for the Securities Act claims are not additive to those for the Exchange Act claims, but are rather subsumed within them.  Nonetheless, maximum aggregate damages under the Securities Act using an 80/20 Multi-Trader model are $46.3 million.  See Barenbaum Decl. ¶53.

damages); <u>SEB Inv. Mgmt. AB v. Align Tech., Inc.</u>, No. 3:18-cv-06720 (N.D. Cal. April 28, 2022), ECF No. 215 (Chhabria, J.) (3.3% to 9.1% of likely recoverable damages).[13]

In light of these considerations, the $17.5 million provided by the Settlement constitutes a recovery for the proposed Settlement Class that is fundamentally fair, reasonable, and adequate. Barenbaum Decl. ¶¶4, 15, 49, 54.

**e)** **The Extent of Discovery Completed and the Stage of the Proceedings**

"Class settlements are presumed fair when they are reached following sufficient discovery and genuine arms-length negotiation." <u>Foster v. Adams & Assocs., Inc.</u>, No. 18-CV-02723-JSC, 2022 WL 425559, at *6 (N.D. Cal. Feb. 11, 2022). Discovery here is more than simply sufficient. Document production was substantially complete, a number of depositions were taken in anticipation of Lead Plaintiff's Motion for Class Certification, and the close of fact discovery was just over two months away when the settlement agreement was reached. <u>See</u> Barenbaum Decl. ¶¶35, 37-40. Moreover, Plaintiffs and their counsel have a deep understanding of the evidence because they reviewed in large part Defendants' document productions; consulted at length with accounting and damages consultants (both as part of the investigation and pleading process and after reviewing Defendants' discovery documents); opposed Defendants' four motions to dismiss; produced the expert report of Zachary Nye, Ph.D. in support of Plaintiffs' Motion for Class Certification and defended his deposition; deposed Defendants' class certification experts Mark J. Garmaise and Jack R. Wiener; produced expert reports of Dr. Nye and Thomas Lee Hazen in support of Lead Plaintiff's Class Certification Reply; and participated in collecting and producing ACERA's and OFPRS' documents responsive to discovery requests and preparing for and defending ACERA's and OFPRS' Rule 30(b)(6) depositions, as well as three depositions of representatives from Plaintiffs'

---

[13] <u>See also</u> <u>Extreme Networks</u>, 2019 WL 3290770, at *9 (5% to 9.5% of "maximum potential damages"); <u>Schuler v. Medicines Co.</u>, No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (4% of estimated recoverable damages); <u>Azar v. Blount Int'l, Inc.</u>, No. 3:16-cv-0483, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (4.63% to 7.65% of total estimated damages).

investment managers.  Id. ¶¶8-9, 27-40, 50.

Thus, a careful and complete evaluation of the evidence led to the conclusion that entering into the proposed Settlement would produce an appropriate recovery for the Settlement Class.  See STAAR Surgical, 2017 WL 4877417, at *4 ("the parties had ample information with which to make informed settlement decisions" after, among other things, having "engaged in substantial discovery").

### f)    The Experience and Views of Counsel

In evaluating a proposed settlement, "the recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  In re Celera Corp. Sec. Litig., No. 5:10-CV-02604-EJD, 2015 WL 7351449, at *7 (N.D. Cal. Nov. 20, 2015).  Here, Lead Counsel endorses the proposed Settlement as fair, reasonable, and adequate.  Barenbaum Decl. ¶¶4, 15, 49, 54, 61.  As detailed above, through extensive discovery, litigation, and mediation, Lead Counsel has a comprehensive understanding of the merits and risks of the claims and the proposed Settlement. Lead Counsel has decades of experience litigating and trying class action cases and similar complex litigation, including securities cases (id. ¶96 & **Ex. 4**), and its assessment that the proposed Settlement is a favorable outcome for Settlement Class Members merits substantial weight.[14]

### g)    Presence of a Government Participant

Courts may also consider the impact of a governmental participant in the litigation.  No such actor is present in this litigation.  In such situations, courts have found that this consideration is inapplicable.  See, e.g., Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("There is no governmental participant in this Class Action. As a result, this factor does not apply to the Court's analysis[]"); see also Fulcher v. Olan

---

[14] Further, OFPRS' counsel Saxena White P.A.—which also has substantial experience prosecuting securities class actions and other forms of complex shareholder litigation, and which expended significant resources assisting in the prosecution this action on behalf of the Settlement Class—similarly endorses the proposed Settlement as fair, reasonable, and adequate.  Barenbaum Decl. ¶¶61, 98 & **Ex. 6**; **Ex. 7** (Kaplan Decl.) ¶¶2, 4 (OFPRS' Counsel).

Mills, Inc., No. 3:11-CV-01821-EDL, 2011 WL 13243724, at *4 (N.D. Cal. Dec. 28, 2011) (same).

Further, relevant governmental officials were notified of the Settlement pursuant to the notice provision of the Class Action Fairness Act ("CAFA").  See Barenbaum Decl. ¶78. "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."  Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 258 (N.D. Cal. 2015).  Lead Counsel is aware of no state or federal official who has raised an objection or concern regarding the Settlement.  See Barenbaum Decl. ¶78.  Thus, even if considered, this factor weighs in favor of settlement.

**h)    The Reaction of the Settlement Class in the Proposed Settlement**

The final Hanlon factor considers the reaction of the Settlement Class.  In this case, after dissemination of the Notice Packets, as ordered by the Court in its Preliminary Approval Order (at 5-6), and having given Settlement Class Members an opportunity to consider the merits of the Settlement, the reaction thus far suggests that the Settlement Class supports the Settlement. While the deadline to object or opt out is February 9, 2023, thus far no purported Settlement Class Member has elected to opt out of or object to the Settlement.  See Barenbaum Decl. ¶77; **Ex. 9** (Blow Notice Decl.) ¶¶15-18.  As of the date of this Motion, 44,005 Notice Packets were mailed to potential Settlement Class Members by the Court-appointed Claims Administrator, Epiq, forty-seven (47) of which were undeliverable and two (2) of which were remailed with updated addresses by Epiq.  **Ex. 9** (Blow Notice Decl.) ¶10.  Although the claims submission deadline is not until February 13, 2023, Epiq has already received 432 claims.  Id. ¶11.  This kind of positive reaction on the part of the Settlement Class supports final settlement approval. See Hanlon, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); Larsen v. Trader Joe's Co., No. 11-CV-05188-WHO, 2014 WL 3404531, at

*5 (N.D. Cal. July 11, 2014) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). Further, Plaintiffs, who are Settlement Class Members and steeped in the facts of the case and history of the litigation, support the Settlement. See Barenbaum Decl. ¶61; Ex. 5 (Weiss Decl.) ¶¶4-5, 8 (ACERA); Ex. 8 (Rankin Decl.) ¶¶7- 9, 12 (OFPRS).

In its expected reply brief and supporting papers, Lead Plaintiff will advise the Court of additional opt outs received (if any) and also respond to objections that are filed (if any).

In light of the above, the Hanlon factors when considered and balanced strongly support approval of the proposed Settlement.

### 2. Application of the Factors Identified in the Amendments to Rule 23(e)(2) Supports Approval of the Settlement as Fair, Reasonable, and Adequate

As demonstrated in the Preliminary Approval Motion (which the Court granted) and now again here, the Rule 23(e)(2) factors largely overlap with the Hanlon factors and also strongly favor approving the proposed Settlement.

### a) Class Representatives and Lead Counsel Have Adequately Represented the Settlement Class

Plaintiffs and Lead Counsel respectfully submit that they have adequately represented the Settlement Class, including with respect to the proposed Settlement. See Barenbaum Decl. ¶¶96, 98, 117. Within the Ninth Circuit, the adequacy inquiry is governed by two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hyundai, 926 F.3d at 566 (quoting Hanlon, 150 F.3d at 1020). Plaintiffs' interests are directly aligned with those of absent Settlement Class Members. They all have an interest in obtaining the largest possible recovery from Defendants, and they will all share pro rata in the Settlement Class's recovery pursuant to the Plan of Allocation. Barenbaum Decl. ¶¶12, 81-82. Moreover, Plaintiffs have actively supervised the litigation and retained experienced counsel

who have vigorously prosecuted the action on behalf of the Settlement Class.  Id. ¶117.

> **b)  The Settlement Agreement Resulted From Arm's-Length Negotiations Between Experienced Counsel**

The proposed Settlement here is the product of extensive, arm's-length negotiations between experienced counsel and supervised by an experienced mediator, Robert A. Meyer, Esq. See Barenbaum Decl. ¶¶11, 41-44.

Courts "afford[] a presumption of fairness and reasonableness … [where] agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel."  In re Netflix Privacy Litig., No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013).  Courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement.  See Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020).  Further, the participation of an experienced mediator in overseeing settlement negotiations—here, Mr. Meyer—strongly supports that there is a lack of collusion or bad faith here.  Walsh v. CorePower Yoga LLC, No. 16-cv-05610-MEJ, 2017 WL 4390168, at *7 (N.D. Cal. Oct. 3, 2017).

On June 9, 2022, after exchanging numerous offers and counteroffers, the parties agreed to a mediator's proposal that the parties settle the claims asserted in this action for $17.5 million.  Barenbaum Decl. ¶43; see Sudunagunta v. NantKwest, Inc., No. 2:16-cv-01947-MWF-JEM, 2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) (approving settlement that was "the outcome of an arms-length negotiation conducted with the help of an experienced mediator, Robert Meyer, Esq.").  The negotiations were informed by the knowledge that Plaintiffs' Counsel gained through their investigation and analysis of the facts and legal issues, including of the costs and risks of continued litigation.  See Barenbaum Decl. ¶44.  The negotiations were at all times hard-fought and have produced a result that the settling parties believe to be in their respective interests.

Finally, the Settlement has none of the indicia of possible collusion identified by the Ninth Circuit, such as a "clear-sailing" fee agreement or a provision allowing settlement

proceeds not distributed to revert to Defendants.  See In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011); see also Stipulation ¶3.8.

> ### c)   The Relief Provided Is Adequate, Taking into Account the Costs, Risks, and Delay of Trial and Appeal, as Well as Other Factors

The primary element of this factor—whether the relief (here, the amount offered) is adequate, taking into account the costs, risks, and delay of trial and appeal—overlaps with several of the Hanlon factors.  As discussed at length at Sections III.A.1.a.-c., supra, the $17.5 million payment to the Settlement Class is a substantial recovery, particularly when weighed against the risks of demonstrating falsity, scienter, loss causation, and damages; achieving and maintaining certification of a litigation class; and being impacted by the potential negative consequences of significant delay and expense associated with ongoing litigation and appeals.

This factor also analyzes the adequacy of the relief relative to several other considerations, including the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[.]"  Fed. R. Civ. P. 23(e)(2)(C)(ii).  As set forth in Section III.A.2.d, infra, the proposed Plan of Allocation provides for a fair, reasonable, and effective method of distributing the Net Settlement Fund to Settlement Class Members.  Barenbaum Decl. ¶¶79, 87-90.

In addition, this factor takes into account "the terms of any proposed award of attorney's fees[.]"  Fed. R. Civ. P. 23(e)(2)(C)(iii).  As the Fee and Expense Motion explains, in addition to litigation expenses and limited plaintiff reimbursement awards, Lead Counsel seeks an award of attorneys' fees of 25% of the Settlement Fund ($4,375,000), plus accrued interest.  Barenbaum Decl. ¶91.  A 25% fee award is in line with the Ninth Circuit's 25% "benchmark."  Hyundai, 926 F.3d at 570.  Here, $4,375,000 would result in a negative multiplier of less than 0.5—that is, it would be far less than Plaintiffs' counsel's collective lodestar to date.  Id. ¶94.  Given the substantial amount of effort expended to bring the action to class certification and through a significant portion of the discovery process, and to achieve the excellent recovery described herein, Lead Counsel respectfully submits that an award of up to 25% would be appropriate, and

courts have granted such awards in similar circumstances.  See, e.g., In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig., 768 F. App'x 651, 653 (9th Cir. 2019) (noting Ninth Circuit case law "permit[s] awards of attorneys' fees ranging from 20 to 30 percent of settlement funds, with 25 percent as the benchmark award"); Vataj, 2021 WL 5161927, at *8 (recognizing 25% benchmark).  Lead Counsel's request is also consistent with a recent study from NERA Economic Consulting, which found that the median attorneys' fees award in securities cases with a settlement value of $10 to 25 million was 27.5%—above the Ninth Circuit's 25% benchmark rate.  See Barenbaum Decl. ¶94 and **Ex. 10**.

Finally, this factor takes into account "any agreement made in connection with the propos[ed]" settlement.  Fed. R. Civ. P. 23(e)(2)(C)(iv) & (e)(3).  The only such agreement here, assuming it falls within this factor, is the parties' confidential Supplemental Agreement (Stip. ¶8.3), which permits Defendants to terminate the Settlement if a threshold number of shares are opted out of Settlement.  Such agreements are standard in securities class actions, ensuring that Defendants are receiving finality, without affecting Settlement Class Members' rights under, or altering the substance or fairness of, the Settlement.[15]

### d)   The Settlement Treats Settlement Class Members Equitably Relative to Each Other

The proposed method of distributing the Settlement Fund to Settlement Class Members, as set forth in the Plan of Allocation, treats Settlement Class Members equitably, and is fair and reasonable for the reasons provided in Section III.B, infra, which supports the request for final approval of the Plan of Allocation.  The Settlement "does not improperly grant preferential treatment to [the Plaintiffs] or segments of the class."  Portal Software, 2007 WL 1991529, at *5.  Indeed, Plaintiffs' recovery from the Settlement Fund will be determined according to precisely

---

[15] Should the Court wish to review the Supplemental Agreement, the Parties respectfully request that they be permitted to present it in camera, as litigants and courts typically treat such agreements as confidential.  See, e.g., Hefler v. Wells Fargo & Co., No. 3:16-cv-05479-JST, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts.").

the same formula as the recoveries of other Settlement Class Members.[16]

* * *

As with the <u>Hanlon</u> factors, the Rule 23(e)(2) factors, when weighed, strongly support Settlement approval.

### B.      The Plan of Allocation Should be Finally Approved

Lead Plaintiff further seeks the Court's final approval of the Plan of Allocation[17] as "fair, reasonable and adequate." <u>Officers for Justice</u>, 688 F.2d at 625. "Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." <u>Gaudin v. Saxon Mortg. Servs., Inc.</u>, No. 11-CV-01663-JST, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015).  An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel.  <u>Rieckborn v. Velti PLC</u>, No. 13-CV-03889-WHO, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015).

As discussed more fully in the Barenbaum Declaration, Lead Counsel, in consultation with its damages consultant, created a plan for allocating the net proceeds of the Settlement among members of the Settlement Class who submit timely and valid Claim Forms.  Barenbaum Decl. ¶¶80-86.  The proposed Plan of Allocation is based on the methodologies and analysis

---

[16] Outside of the recovery, and as detailed in the Fee and Expense Motion, ACERA, on behalf of itself and OFPRS, seeks a modest award of $18,500, plus interest, collectively for their costs and expenses.  <u>See</u> Barenbaum Decl. ¶116. This award is a repayment of certain basic costs stemming from their efforts in this action and does not suggest that Plaintiffs are being treated differently than the remainder of the Settlement Class.  The PSLRA allows for "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Similar named plaintiff awards have been found to be presumptively reasonable in this judicial district. <u>See</u>, <u>e.g.</u>, <u>In re SanDisk LLC Sec. Litig.</u>, No. 15-cv-01455-VC, slip op. at ¶¶6-9 (N.D. Cal. Oct. 23, 2019), ECF No. 284 (Chhabria, J.) (order awarding attorneys' fees, payment of litigation expenses, and reimbursement of class representatives' costs and expenses of $7,300, $7,717.50, $7,474.44, and $8,557.50 to each class representative); <u>Vataj</u>, 2021 WL 5161927, at *10 ($15,000 reimbursement to co-lead plaintiffs); <u>STAAR Surgical</u>, 2017 WL 4877417, at *6 ($10,000 reimbursement).

[17] The proposed Plan of Allocation was detailed in the Court-approved Notice (at 17-23) sent to Settlement Class Members and posted to the Settlement website at <u>www.PortolaSecuritiesLitigation.com</u>.  To date, there have been no objections to the Plans of Allocation.  <u>See</u> Barenbaum Decl. ¶77; **Ex. 9** (Blow Notice Decl.) ¶¶17-18.

performed by Lead Plaintiff's consultants and experts in support of class certification and market efficiency, including an event study, as well as relevant loss causation and damages considerations and calculations.  Id. ¶¶51, 80-86.  Thus, it provides for a claims process that distributes the Net Settlement Fund pro rata based on the approximate individual losses of eligible Settlement Class Members.  See Notice.  Courts regularly approve similar allocation plans in securities class actions.  See Extreme Networks, 2019 WL 3290770, at *8 (finding pro rata allocation "did not constitute improper preferential treatment" and was "equitable").[18]  Lead Counsel believes that such a plan is fair, reasonable, and adequate.  Barenbaum Decl. ¶¶87-90.

As more fully described in the Notice, the Plan of Allocation assumes that the price of Portola's common stock was artificially inflated throughout the Settlement Class Period. Barenbaum Decl. ¶82.  The computation of the estimated alleged artificial inflation in the price of Portola's common stock during the Settlement Class Period is based on certain misrepresentations alleged by Lead Plaintiff in the TAC and the price change in the stock, net of market- and industry-wide factors, in reaction to the public announcements that allegedly corrected the misrepresentations alleged.  Id. ¶83.  The Plan of Allocation sets forth Recognized Loss (as defined in the Notice) estimates based on Lead Plaintiff's determination, made in consultation with its damages consultant, that corrective disclosures removed artificial inflation from the price of Portola's common stock on January 10, 2020, February 27, 2020, and March 2, 2020 (the "Corrective Disclosure Impact Dates").  Id.  Thus, in order for a Settlement Class Member to have a Recognized Loss under the Plan of Allocation, Portola's common stock must have been purchased or acquired during the Settlement Class Period and held through at least one of these Corrective Disclosure Impact Dates.  See id.  Distribution of pro rata settlement

---

[18] If, after the first distribution, a sufficient amount of money remains unclaimed from the Net Settlement Fund, Epiq will make a second distribution according to the Plan of Allocation, should it be economically feasible to do so.  Barenbaum Decl. ¶86.  After that, assuming any remainder is too small to distribute to Class members, Lead Counsel will seek Court approval to have Epiq distribute any such remainder in the Net Settlement Fund to FINRA Investor Education Foundation (or such other non-profit organizations approved by the Court)—an organization that promotes interests of Settlement Class Members and with which the Parties, Class Counsel, and Defendants' Counsel have no relationships.  Id.

proceeds to Settlement Class Members who submit timely and valid claims will be based on these calculations described, taking into account the date of purchase and sale of each share.  See id.

For these reasons, the Plan of Allocation is fair, reasonable, and adequate, and it should be approved.

### C.     The Court-Approved Notice Satisfies the Requirements of Rule 23, the PSLRA, and Due Process

The Federal Rules of Civil Procedure require that class members be provided with the "best notice that is practicable under the circumstances, including individual notice to all [class] members who can be identified through reasonable effort" and "who would be bound by the propos[ed]" settlement.  Fed. R. Civ. P. 23(c)(2)(B); accord Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974), and Rule 23(e)(1)(B) (notice must be given "in a reasonable effort").

At preliminary approval, the Court approved the Notice plan as to form, substance, and content.  Preliminary Approval Order 4.  Upon and in compliance with the Court's Preliminary Approval Order, Lead Plaintiff implemented the Notice plan, which are in accord with the requirements of Rule 23; the PSLRA, 15 U.S.C. § 78u-4(a)(7) and 15 U.S.C. § 77z-1(a)(7); the N.D. Cal. Guidance; and this Court's Standing Order.  Barenbaum Decl.  ¶68.

Pursuant to the Court's Preliminary Approval Order, the Notice and the Claim Form were mailed on November 14, 2022 to all registered holders of Portola common stock during the Settlement Class Period identified by Portola's transfer agent, and to a list of the largest and most common banks, brokers, and other nominees maintained by the Claims Administrator. See **Ex. 9** (Blow Notice Decl.) ¶¶4-5, 7; Barenbaum Decl. ¶¶69-70.  Since receiving preliminary approval, the Claims Administrator has disseminated a total of approximately 44,005 copies of the Notice Packets. See **Ex. 9** (Blow Notice Decl.) ¶10; Barenbaum Decl. ¶¶69-70.

Additionally, on November 21, 2022, the Claims Administrator caused the Summary Notice to be published in Investor's Business Daily/Weekly and transmitted over the PR Newswire, which is a widely disseminated, national business newswire service.  **Ex. 9** (Blow

Notice Decl.) ¶12; Barenbaum Decl. ¶71.

Further, the settlement website, www.PortolaSecuritiesLitigation.com, went live on November 21, 2022. **Ex. 9** (Blow Notice Decl.) ¶14; Barenbaum Decl. ¶72. The website contains, among other things, the Notice, Claim Form, and Stipulation, as well as copies of relevant Court documents including the TAC, the Preliminary Approval Motion and supporting papers; and the Court's Preliminary Approval Order. Id. Lead Plaintiff's final approval motion as well as its fee and expense motion and supporting papers will also be posted on the website when filed. Id.

The Notice is written in plain language and apprises Settlement Class Members of the nature of the action, the definition of the Settlement Class to be certified, the Settlement Class claims and issues, and the claims that will be released. The Notice follows the Court's Preliminary Approval Order and is consistent with Rule 23(c)(2)(B) and the PSLRA.[19] These disclosures are thorough and should be approved.

As such, under the circumstances here, the "best notice practicable" was disseminated to

---

[19] The Settlement Notice: (1) describes the Settlement, Settlement Amount, and potential recovery both on an aggregate basis and an average per-share basis; (2) explains that the parties disagreed regarding whether any damages were recoverable even if Plaintiffs prevailed on their claims and includes a brief description of why the parties are proposing the Settlement; (3) includes a brief description of the maximum amount of fees and expenses that Lead Counsel and Plaintiffs will seek; (4) describes the Plan of Allocation; (5) advises of the binding effect of a Judgment on Settlement Class Members under Rule 23(c)(3); (6) advises that a Settlement Class Member may enter an appearance through counsel if desired; (7) states that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadline for doing so); (8) describes how to object to the proposed Settlement and/or requested attorneys' fees and expenses and/or the request for an award to Plaintiffs for their costs and expenses, and describes what these payments, if approved, amount to as an average per share; (9) provides instructions on how to complete and submit a Claim Form; (10) provides the names, addresses, and telephone numbers of representatives of the Claims Administrator (including the settlement website) and Lead Counsel, both of whom will be available to answer questions from Settlement Class Members; (11) includes instructions on how to access the case docket via PACER or in person at the court; (12) states the date, time, and location of the Final Approval Hearing and that the date may change without further notice to the Settlement Class and advises Settlement Class Members to check the settlement website or the Court's PACER site to confirm that the date has not been changed; and (13) includes the deadlines for submitting Claim Forms, opting out of the Settlement, and filing any objections to the Settlement, the Plan of Allocation, or to Lead Counsel's requested attorney's fees and Litigation Expenses or the request for an award to Plaintiffs for their costs and expenses. Barenbaum Decl. ¶76.

all potential Settlement Class Members that could be reasonably identified. Notice was therefore Sufficient and in accordance with Rule 23(c) and (e) and the PSLRA, and it satisfied due process.

> ### D. Class Certification Of The Settlement Class Under Rule 23 Remains Appropriate

In presenting the proposed Settlement to the Court for preliminary approval and approval of class-wide notice, Lead Plaintiff requested that the Court (i) conditionally certify the Settlement Class so that the Notice and Claim Form could be issued; and (ii) appoint Plaintiffs and Lead Counsel as Settlement Class representatives and Settlement Class Counsel, respectively. Preliminary Approval Motion 27-34. In its Preliminary Approval Order (at 3), the Court granted those requests.

Nothing has changed to alter the propriety of the Court's Preliminary Approval Order regarding certification of a Settlement Class. Therefore, for those reasons stated in its Preliminary Approval Motion and pursuant to Rules 23(a) and (b)(3), Lead Plaintiff requests that the Court finally certify the Settlement Class for purposes of effectuating the Settlement.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate, and finally certify the Settlement Class.

DATED: January 26, 2023   Respectfully submitted,

**BERMAN TABACCO**

By:  */s/ Daniel E. Barenbaum*
   Daniel E. Barenbaum

Nicole Lavallee
Jeffrey V. Rocha
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
  dbarenbaum@bermantabacco.com
  jrocha@bermantabacco.com

Patrick T. Egan (*Pro Hac Vice*)
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: pegan@bermantabacco.com

*Counsel for the Lead Plaintiff Alameda County
Employees' Retirement Association and Lead Counsel
for the Class*

David R. Kaplan (SBN 230144)
**SAXENA WHITE P.A.**
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096
Email: dkaplan@saxenawhite.com

*Counsel for Additional Named Plaintiff / Settlement
Class Representative Oklahoma Firefighters Pension
and Retirement System*